Number 19-2225, WellPoint Military Care Corporation v. United States, Mr. Cawley. Good morning, Mayor. Please, court. When a buyer is selecting between... Let me start out with a hypothetical here, which would help me if you could answer. Let's assume that the final determination, the final evaluation doesn't include any error in it, but that the advisory committee recommendation and the technical evaluation team recommendation do include errors in them. As I understand it under the regulations, the contracting officer who makes the final decision is required to make a, quote, independent determination. So as a matter of evaluating prejudicial error, harmless error, does it really matter whether the advisory committee and the technical evaluation team have made mistakes if the contracting officer who made the final decision didn't make a mistake? Your Honor, I think the issue that you're asking about, if I can jump into it, as a matter of prejudice, is whether or not some of these elements that we're talking about from the prior evaluation entered into the source selection authority's decision, the source selection decision document. I think what I'm asking is that the hypothetical is there's no apparent error in the contracting officer's final decision, but there are errors in the technical evaluation team and the advisory committee's recommendations that are passed up the line to the contracting officer. Do those errors in the recommendations constitute prejudicial error or not? I believe they do, and the reason that they do is where you have a situation where the source selection authority in the source selection decisions is relying on those underlying evaluations as the basis for what he's determining. How do we know that the contracting officer was relying on those? In this particular case, the source selection decision document states exactly what the source selection authority looked at and reviewed for purposes of making his decision. That's different than reliance. Well, but we can also see from the source selection decision document that it basically incorporates wholesale, verbatim, major portions of what the source selection advisory council wrote up in its report. He took those recommendations, he took those... Yeah, but under my hypothetical, it doesn't include the bad stuff. Well, under your hypothetical, your honor, if the source selection authority, if I can elaborate on that hypothetical, had said, I reject these negative findings and come to a different conclusion. That's not what happened in this case. In this case, the source selection authority took those bad findings and adopted them. No, but I'm having trouble seeing that. Where does he say he adopted them? Well, in the narrative of what he's written out is exactly a replication. Can we look and see where in the appendix what you're relying on for that process? Sure. At least in the... I can talk about the two different issues. On the price issue, the statement about the price differential... Let's put aside the price differential thing for a moment and just concentrate on the corporate experience issue. On the corporate experience, if you look at the source selection decision document, he not only takes the... Are you at A2039? A2039, A2040, and A2041, where the demonstration of the competitive advantage to OPSS is adopted verbatim and the source selection decision, the source selection authority makes the same mistake of treating WellPoint separate from its corporate parent as two different entities and treating Optum and OPSS as one and the same. Where did he do that? Can you quote us a line or two? Sure. First, he gives a verbatim repeat of the competitive advantage at A2309 and A240, but then his conclusion, he talks about Optum's robust network and extensive corporate experience far exceed the other offers. Optum's demonstrated corporate experience represent a clear competitive advantage over both TriWest and WellPoint. He refers to Optum only. That's the problem that created the competitive advantage. On the next page, he does say WellPoint's general corporate background experience and qualifications, in addition to those of its parent company, represent a benefit to the government. I appreciate that. There is a recognition that WellPoint's parent companies have some advantages also, as does WellPoint as the subsidiary. And then the final sentence is Optum, TriWest, and WellPoint each have prior experience managing large health care contracts. Clearly, when it referred to WellPoint there, it was really referring to WellPoint's parent, right? Well, actually... Not WellPoint standing alone. Not necessarily, because the underlying evaluation recognized that WellPoint standing alone had some experience doing that. The problem here is that there's no... That WellPoint had prior experience managing large health care contracts? Yes, your honor. And that's reflected in the technical of team's evaluation, that WellPoint did some, but not that much. That was the problem. In this particular instance, we're not talking about a single weakness being assigned to WellPoint based on WellPoint's lack of experience. What we're talking about is a fundamentally inconsistent different evaluation. Okay, but let's get back to the question of where in this decision, this final decision about the award, he adopts these earlier statements from the advisory committee and the technical evaluation team. I thought you were going to tell us that there was prejudice here because of those statements by the advisory committee and the technical evaluation team, because the contracting officer adopted them. Where do we find that? Well, your honor, cited in the appendix, I can pull it out and read it, but the appendix language is a verbatim adoption of the SSAC's competitive advantage that was assigned to Optum. It was assigned to Optum. It was not assigned to OPSS. The fundamental problem... Where is the language you're relying on? In the appendix at 2039. 2039. Your honor, in this particular language, Optum possesses the competitive advantage over TriREST and WellPoint. If I read down through that competitive advantage, I have to go back and compare it to the source selection advisory commission's counsel's report, but it is essentially a repeat of the competitive advantage. The problem with adopting the competitive advantage was that the competitive advantage resulted from having treated Optum and OPSS as a singular entity. I'm sorry. I'm not seeing where... Under the regulation, it's very specific. The contracting officer has to make a, quote, independent determination, right? Yes, your honor. So the question is, in making that independent determination, did he adopt errors from the technical evaluation team, assumed errors from the technical evaluation team at their advisory committee? I'm just having difficulty seeing where he adopted those things or specifically relied on. Your honor, if you're looking for a sentence that says, all of the things that the source selection advisory committee and the technical evaluation team did, I don't have all of that language quoted in his source selection decision document, but we have the body of the source selection advisory counsel's language adopting the source selection, adopting that competitive advantage, repeated verbatim in his source selection decision document. The competitive advantage was not something that the source selection authority invented through his independent evaluation. It's something he was presented with by the source selection advisory counsel and used in his decision as the basis for his tradeoff. That competitive advantage... There's a paragraph in the SSA's decision at 820.40, 820.40, that's devoted to analyzing Bill Point's corporate experience. Is there something inside that paragraph that, to you, reveals that the contracting officer here was carrying forward some penalty against Bill Point's corporate experience because Bill Point standing alone has really minimal managerial experience of large health care networks? Yes, your honor. Okay, so where in this paragraph is that? Well, first let me reiterate that it's the use of this competitive advantage. In that particular paragraph, the source selection authority adopts the same analytical perspective that's problematic throughout. Is there a sentence in this paragraph that you want to highlight for me that makes me want to believe what your argument is standing for? Two points in that paragraph. The first sentence talks about Will Point's general corporate background in addition to those of its parent company. He's drawing the same distinction that's been drawn throughout the evaluation between Will Point and its parents and affiliates. Later in that paragraph, he talks about the experience of the company's affiliates, but then notes that not all of the affiliates have been doing so for that long. Again, making analytical distinctions between Will Point as the subsidiary and the corporate affiliates that it draws on. In this case, you had two corporate subsidiaries being put forward as the prime contractor offer. Only one of those was evaluated. If it was important to consider the capability of one of the subsidiaries, then both subsidiaries needed to be considered equally. Here, there was no consideration at all for the OPSS subsidiary. Look at 2040 in this final decision by the contracting officer. It says specifically, Will Point's general corporate background experience and qualifications in addition to those of the parent company represent a benefit. In addition to those of the parent company, he made a judgment by distinguishing between Will Point and its parent. The only finding that he makes here about a corporate advantage is a corporate advantage for Optum. Optum is not OPSS. Optum is not the prime contractor offeror the same way that Will Point Military Care is. Optum, OPSS, the prime contractor offeror, was never evaluated. Just so that I understand or correct me if I've misunderstood, your view is that the authority here did look at both Will Point immediately and the Will Point family, but did not look at OPSS individually, just the Optum family. Correct, Your Honor. And it's what's missing as to OPSS that's your grievance, not what is present as to Will Point. It's the fact that they adopted that perspective, that analytical approach, which evolved into this competitive advantage that's the problem. When they looked at Will Point, they said, well, Will Point doesn't have the capability to manage large contracts. Will Point has only so many employees. Will Point has only such and such experience. There's nothing in the record anywhere making any kind of similar assessment of OPSS separate from Optum. Optum and OPSS were treated as one unit. The problem is that what you're talking about there is in the advisory committee and the technical evaluation team. That kind of specific differential treatment does not appear in the contracting officer's decision. Well, Your Honor, what appears in the contracting officer's decision, and I think the government's briefs make this point as well, is that the source selection authority traditionally relies upon the evaluation record that comes to him and builds up. The source selection decision document actually... How do we know that? Because the source selection decision document quotes from or replicates the language of the underlying evaluations and uses... No, is there any evidence in the record about what contracting officers traditionally rely on? Well, there's evidence in the record about what this source selection authority relies on. Okay, but I'm asking about what they traditionally rely on. Is there any evidence in the record about that? Your Honor, as a matter of tradition, I guess I would look to case law, but in terms of what they traditionally rely on, they rely on the reports of the lower level evaluators that are presented to them, and those are in the cases that are cited in the government's brief to that extent. But in this particular case, I know what they relied on because the source selection authority in his source selection decision document reports, A, what he looked at and relied on, repeats the same language from those underlying evaluations, and then uses the same findings from those underlying evaluations as the basis for his tradeoff decision. I don't have a sentence that matches your demand for, I find the same thing that was found below, but what he does is use that finding and repeat those findings and use that as the basis for his tradeoff. You agree that under harmless error analysis, it's important to look at the final decision maker, right? I mean, Shinseki v. Sanders says that specifically. Of course. Yeah, okay. Your Honor, I'm into my rebuttal time, but... I'll give you two minutes, okay? Can I make a point briefly about the price issue here? No. No? You can do that in your rebuttal time if you want to do that. Okay, I'll wait for my rebuttal and see where that goes. Thank you, Your Honor. Any other questions before I sit down? No. Thank you. Okay, Mr. Major, is that right? Thank you, Your Honor. May it please the Court. In assessing the question of prejudice and whether or not the source selection authority simply adopted the weakness found by the technical evaluation team... Do you agree that the technical evaluation team and the advisory committee made mistakes in the evaluation? No. Why not? Because what happened was WellPoint and Optum offered different corporate structures to the government. If you read WellPoint's proposal, WellPoint provides it is significant... And this is their own language. It is significant that WellPoint is at once new and yet built on the backbone of a Fortune 500 company. They received a weakness for being new and for only having nine employees and at the same time received a strength for being built on the backbone of a Fortune 500 company. In contrast, in Optum's proposal, they provided that for the purposes of the community care network, for what the VA was building, that Optum would be the sum of its affiliates. Even if we assume that OPS... I'm not sure that I see that really as a glaring distinction. I mean, they're both relying on the experience of the overall network, right? Yes, but I mean, what you're presenting and how... What WellPoint did was put its weakest point forward. The tip of WellPoint's spear was this weak nine-employee company and the technical evaluation team reasonably looked at that and said, look, WellPoint plans to expand. They told us they've got nine employees. They're planning to expand to 245 employees and that increases the risk of unsuccessful performance by WellPoint. That plan was not set forth in Optum's proposal. OPSS, even if we assume it's the equivalent of WellPoint, at the end of the day was rolled back. I mean, there's a difference. You could have the exact same components and how you structure those components for the purposes of a proposal can determine whether you get a strength or a weakness. And again, this is just strengths and weaknesses. This is not ultimately the overall score that they're receiving. But if you take a bundle of sticks, for example, and you take those sticks and you put the But it's backed up by a very strong bundle of thicker sticks. Well, it's relevant that you have that weak stick right at the outset. You take that stick instead, bundle it into something like a hammer. Well, yes, the same weak stick is there, but it doesn't matter anymore. It no longer becomes relevant. So you have to look at the proposals as the technical evaluation team did in assessing strengths and weaknesses. It's about what the offers present. And at the end of the day, WellPoint What exactly is the difference? Where do we see that in here? Well, we see that ultimately in their proposals. I mean, 83 of the administrative record, for example, is where WellPoint is talking about That wasn't a joint appendix site? That wasn't, excuse me, in the joint appendix. Yes. Thank you, Your Honor. 83 of the joint appendix is where WellPoint describes it as significant. It's a once new and built on the backbone. WellPoint also describes itself on the same page as the accountable Wait, wait, wait, hold on. 883? 883, Your Honor. Okay, so what do they say here? They describe themselves, they begin by saying it is significant that WellPoint Where are we? Where are we on the page? This is, I do not have the page in front of me, but Right under the heading reliable. Your Honor, if you could give me a second, please. All right, under the heading of Why is this a red line? A red line? Yeah, my copy of 883 has a red line. Well, I think that's probably There's confidential and non-confidential copies. I'm not certain if Your Honor is looking at confidential copies. This is like correcting in your Word document red line, not red board and telling us. Oh, oh, well, that's because this was a final proposal revision. So it was how offerors would revise their proposals. You have effectively the essence of their original proposal. And then if you look through the proposal, you can see, you know, what sort of changes they made as they were in discussions with the government about their offer. So that's why you would have a red line. You know, it's effectively how the proposals were presented to the government. And, you know, we see that, you know. Okay, so where on this page do they say that they're just relying on the specific entity and not the overall thing? Well, they're not just relying upon a specific entity. Again, their specific language here under the heading reliable. It is significant that WMC, which would be WellPoint, is at once new yet built on the backbone of a Fortune 500 company with vast experience and high quality performance. New translates to a weakness in technical evaluation teams evaluation. How's that different from the other one? Well, the difference would be if we turn, for example, to page 858 of the appendix, which I believe may be in the other volume, unfortunately. I mean, there, after describing some of the corporate structures and the corporate background, they provide that for the purposes of VACNN, Optum is the sum of its affiliates. That's the last line of the paragraph. And so it's presenting a sort of different structure. And again, that translates to they both had the same strength, but at the end of the day, they had different weaknesses. Okay, let's assume we reject that. And let's assume that the errors, if there are errors, in the technical evaluation team and the advisory committee found their way into the final determination by the contracting officer. Is that error, assumed error, in the contracting officer's decision harmless error because it wouldn't have changed the result here? It's harmless error because it wouldn't have changed the result. I think we, you know, I think we can see... How do we know that it wouldn't have changed the result? Well, because we have the findings of the source selection authority. He states that, you know, in this particular case that he has looked, you know, beyond... That he's not simply counting the relative strengths and weaknesses. He provides his reasoning on page 2041 and 2042 of the joint appendix. Sets forth what he finds as significant. If you compare what the source selection authority said to... You would have to have these side by side. But if you compare what the source selection authority said to the technical evaluation... But he doesn't say, if I were wrong about the corporate experience factor, I'd still reach the same result. We don't have anything like that. No, he doesn't. So how do we know? Let's assume that they'd both been rated equally on the corporate experience factor. That that wouldn't have potentially affected the result. Well, they weren't here. I think it becomes... I mean, as we get into the more hypothetical territory, it becomes more difficult to assess whether or not a particular... Whether or not an error effectively is prejudicial. It's a finding of fact by the trial court for a reason. Because you actually need to look deeper into these sort of ratings and see what actually happened here. I mean, here, you know, the source selection authority specifically states what's important to him, how he distinguishes between... Where's the finding of the trial court that that wouldn't be prejudicial? In 20...  And that is... Make sure I have the right volume of the joint appendix. Well, in the blue brief, we have the decision attached, right? Yes. Plains court decision. Prejudice. Leave the finding of no prejudice. Yes. First and second. Page 18 and 19 of the appendix. Page 18 and 19 of the appendix. I'm trying to find the exact line. First, the record evidence shows that the VA's evaluation proposals under solicitation's corporate experience capability subfactor did not prejudice WellPoint with regards to VA's award decision. WellPoint correctly observes the VA assigned a weakness in its proposal for lacking direct corporate experience. The administrative record shows the VA did not consider this weakness in making the agency's best value determination. So that's specific parts of the record.  Yes, Your Honor. And that finding is not clearly erroneous and is correct. My time's about to expire. Where is that citation, Judge? It's on page 18, the paragraph of the appendix. The paragraph begins first. It is the second paragraph under B, WellPoint unequal treatment claim is unsubstantiated. And what's the support for that? It cites to the source selection authority's decision, noting the VA did not consider this weakness in making the agency's best value determination, then quotes a selection from both the oral argument and then proceeds to go back to the SSA's source selection authority's decision. That would be the purposes of the court has referred to today, the contracting officer. In this case, I'm sorry, I'm not understanding what you're saying. He cites to 17099 here, which is 2041 of the appendix. It's 2041 of the appendix. Yeah, so where in 2041 does it say this? I mean, the quote is not from 2041. The quote that was used is from oral argument. Does that clarify, Your Honor? Well, I'm not seeing this. I mean, the cite here is to 17099, which is 2041. Yes. OK, so where's the cite to the oral argument? And then it cites to oral argument transcript right after that. Specifically, the record shows and then it cites the oral argument contract transcript rather than actually citing to the language, which is actually found at 2041 about the source selection authority, not simply counting the relative strengths and weaknesses assigned during the evaluation process. I don't know what that, what does that mean? It means that the source selection authority went beyond simple assessment of strengths and weaknesses, which they proceed to do. I mean, they then proceed to list what is important to them with regards to their determination of why. Why does that mean? How does that show that they didn't consider the corporate experience thing? They didn't rely upon that corporate experience and that, rather, they didn't rely upon that weakness. How do we know that? Because the contracting officer, or rather the source selection authority, lists what's important to them specifically. The next several paragraphs, they specifically distinguish between the two of them and then make the trade-off analysis of why, even though WellPoint had a price advantage, at the end of the day, the source selection authority would choose to go with Hopkins' higher technically rated proposal. So we have... But how does that, I'm sorry, I'm just not understanding this. How does that show us that he didn't consider the corporate experience thing? Well, because it shows what they did consider. You don't... I'm not saying they didn't consider... I'm saying they didn't consider the weakness that was found in corporate experience that is the whole basis of WellPoint's challenge. WellPoint's challenge isn't based upon the corporate experience rate, it's based on a single weakness. You're suggesting that the Court of Federal Claims found that this was not prejudicial because it wasn't a factor in reaching the decision by the contracting officer. I am not seeing any support for that. Where is the support? I am saying the weakness was not a factor. And that is... How do we know that? Because they... I mean, Your Honor, it's very simple. We can look at what the contracting officer said in his decision. Okay, what, where? And we can look, well, Your Honor, I can't find the contracting officer in his decision saying, and I can't provide you with a quote for something he didn't do. I mean, the technical evaluation team at 1265 Joint Appendix provides that, you know, there's a weakness. WellPoint has nine people. This increases the risk of unsuccessful performance. You find none of that in the Source Selection Authority's decision. Instead, you find the Source Selection Authority, when it talks about WellPoint, talks about its corporate experience in a favorable fashion. So, yes, I can't say where the Source Selection... It's based on my review of the SAC's comparative analysis evaluation of technical past performance, blah, blah, blah, and my integrated assessment of all proposals. It's my decision. So he's considering everything, including this, including the corporate experience. I can't disagree that he looked at those. If it is enough that he reviewed the technical evaluation team's determination, then yes, that would be it. But the Source Selection Authority is required to independently set out his reasoning. He does set out his reasoning. He provides what distinguishes between the two offers, what is significant for him specifically, and he talks about things like Optum's expansive network. He's not talking about this nine-person WellPoint weakness. It simply vanishes. It's such an insignificant factor in the evaluation that we don't see him saying, we're expressing the same concerns that the technical evaluation team did. And let's be clear, the technical evaluation team's concerns are very specific. You know, it's based on that sort of nine persons, based upon the increase of risk of unsuccessful performance. They set forth their reasoning clearly. You don't find that same reason in the Source Selection Authority's decision, and therefore, I can't provide a citation for him replicating that reasoning in any sort of fashion. Okay, all right. Thank you. Are there, if there are no further questions? No, I don't think so. Mr. Carey? Okay, please, the Court. I would like to first address the Court's most recent question, how do we know that it didn't matter? And I think how we know is by looking at the Source Selection Decision, and in particular, Appendix Page 2041. And for context, what's happening there, Your Honor, is the Source Selection Authority is explaining why, despite the fact that WellPoint is somewhat lower priced, he thinks an award to Optum makes sense. And he's identifying the reasons why he's making an award to Optum, despite a modest premium. And the reasons are, number one, the better provider network. But then, number two, his determination that Optum had an advantage in corporate experience. And the key, Your Honors, is that his reason for concluding that Optum had an advantage in corporate experience had nothing to do with the weakness that the lower-level evaluators assigned. His reason for finding that Optum had an advantage in corporate experience had only to do with Optum and the broad strengths of the Optum enterprise. And by Optum here, you mean the family, not OPSS specifically? That's right, Your Honor. He's making an award... I hesitated, so I said something wrong. Tell me what I should be worried about. No, you didn't say anything wrong, Your Honor. He's making an award to OPSS. But I certainly agree with counsel for the government that what OPSS was offering were the full capabilities of the Optum and UnitedHealth enterprise. And somewhere early on, I think we were looking at it before, there's a sentence that says, for these purposes, Optum is kind of the whole group, not just OPSS. That's correct. And the proposal goes through in some detail and says, from this affiliate, here's what we're getting. From that affiliate, here's what we're getting. But back to the question of how do we know it doesn't matter. At the bottom of appendix page 2041 and going over on page 2042, the source selection authority explains why he thinks Optum is better for corporate experience. And just reading that paragraph, you can see that the reason is all about the organizational strengths of Optum. They have nothing to do with the weakness that was assigned to WellPoint. And so if that weakness was removed, if that weakness had never existed, the source selection authority would have reached the same conclusion. He still would have concluded that Optum has an advantage in corporate experience, and he still would have reached the exact same award decision. Near the bottom of A2041, in that last paragraph, the third sentence says, all three offerers have provided existing networks in the states comprising Region 3. So did WellPoint, standing alone, have a pre-existing network in the states comprising Region 3? I believe that WellPoint relied on its Anthem parent networks as well, Your Honor. I guess that's my point, is that the reference to the offeror WellPoint in that sentence must have necessarily been contemplating the entire organization behind WellPoint, that is, its parent and all affiliates, and not just WellPoint, the nine-employee outfit. I believe that's right, Your Honor, and I believe under the RFP, the RFP stated that the agency would evaluate offerors based not just on the specific offering entity, but based on the overall organization, and that's exactly what the agency did here. So that's why I think the source selection decision makes it clear that the weakness ultimately didn't matter, played no role. Okay, but there were two different harmless error theories here, which are quite different. One is that whatever errors there were in the technical evaluation team and the advisory committee didn't influence or find their way into the final decision by the contracting officer. Alternatively, there's an argument that even if they did, even if the contracting officer made a mistake in the corporate evaluation factor, that the corporation evaluation factor didn't play any role in the final decision. Do you support both of those? No, only the first, Your Honor. So certainly, the corporate experience factor played a role in the award decision because it was one of two discriminators that the source selection authority pointed to to say Optum is worth a modest premium. But we can see from this record that the reason that corporate experience was an advantage for Optum had nothing to do with the weakness and only to do with... Okay, so if I understand what you're saying, you disagree with the government's theory that even if the contracting officer made a mistake on the corporate experience point, that that would have been a harmless error because the CEO would have reached the same decision anyway? Well, there's no indication here that the contracting officer made the same mistake. I understand that argument, but I'm assuming that let's assume that he did make the same mistake and I know that you contest that and we've talked a lot about how you make a mistake. Are you arguing that that would be harmless error? Yes, that would be harmless error. Why would that be harmless error? Because even if he... And by mistake, I'm interpreting mistake to be that he also believed that WellPoint correctly had a weakness. Even if he adopted that view, that WellPoint correctly had a weakness, we can see from this decision that that weakness had zero impact on his award decision because his award decision came down to three things. Number one, the fact that WellPoint was slightly cheaper. Number two, the fact that Optum had a stronger provider network. And number three, the corporate experience, the advantage for corporate experience for Optum, but that advantage had nothing to do with the weakness. The only thing it had to do... I'm not following that. Well, so I get it, Your Honor, but I think if you read the bottom of appendix page 2041 and going on appendix page 2042, that's the paragraph that talks about the two things that distinguish Optum from WellPoint. And the first part of that paragraph talks about the provider network. And then only at the very bottom of that paragraph, I'm sorry, at the very bottom of page 2041, we get to the corporate experience. And it says, further, with respect to corporate experience, Optum is a proven market leader that will allow VA to stay on the cutting edge of health care rather than being in a reactive mode, as VA has proven to be historically. Optum proposes to invest $3.2 billion in technology annually. Going on to the next sentence, Optum's demonstrated corporate experience represents a clear competitive advantage. And if you then, Your Honor, tie that back to the discussion on pages 2039 and 2040, and particularly on page 2039 where he's discussing Optum, he talks about, he says, Optum's proposal is stronger in the area of general corporate experience capability. And he talks about the full range of the Optum affiliates, the whole organization there. He talks about Optum RX. He's saying that Optum has a clear competitive advantage on corporate experience, right? But he's, in doing that, he's looking at the entire organization. He's not, he's looking for both offerors, both Optum and WellPoint. He's looking at the whole organization, and he's concluding that the organization as a whole, the United Health enterprise as a big United Health, is stronger than Big Anthem. Okay, that seems to me to be an argument that he didn't make a mistake in the first place, rather than an argument that if he made a mistake, it was non-prejudicial. But I understand what you're saying. Okay, thank you. Thank you, Your Honor. Okay, Mr. Colley. If I go back to Judge Sorrento's question that he asked me earlier, I think that gets to the heart of the issue. That would be Toronto. I apologize, I'm often Coley, so I do recognize the difficulty here. The problem here is that the SSA never considered OPSS, never evaluated it. If this is an independent evaluation, the only thing that the source selection decision document ever references is Optum. It does reference WellPoint, and it does reference its different corporate parents, but it never references anything about OPSS. As I understand it, though, the prejudicial error point being made is that doesn't matter because the contracting officer, unlike the earlier stages, didn't place any reliance on the weakness of WellPoint itself. So the difference, whether there was a difference or not between OPSS and WellPoint specifically, just plays no role in the contracting officer's evaluation. When the contracting officer was evaluating corporate experience, he was plainly looking, the argument goes, at the families, not the individual. And I think that argument's a mistake. And the reason I think so is because, and I would highlight two places in the record to go back and take a look at, Appendix 2039 and 24 to 40, which we've talked about a lot today, but go back and look at the source selection advisory to report to the SSAC, which he reviewed at 2022 to 2023. You'll see the verbatim comparison. This source selection authority never went back and looked at the proposals. What he looked at was what he was receiving from the underlying evaluators. The underlying evaluators never looked at OPSS. The weakness is a distraction. This isn't about the weakness. The prejudice here is that there was a disparate evaluation that evolved into a competitive advantage. That competitive advantage was something that the SSAC presented to the source selection authority that he adopted and accepted without making any independent assessment of his own of the difference between OPSS and Optum. Did you ever ask to depose the contracting officer? No, Your Honor. Why not? There was not an opportunity before the GAO and we never tried to supplement the record because we thought the record was sufficient in showing that there In PRESA, we approved the deposition of a contracting officer under some limited circumstances to figure out what the contracting officer considered and what he meant, but you never asked for that? No, Your Honor. We thought the record had enough information about what the source selection authority had considered here. The record is clear that while there was apparently a view that it was important to evaluate the subsidiary prime offer when it equivalent evaluation of the subsidiary prime offer, OPSS in this case, all of that churned around in the lower level evaluations evolved into a competitive advantage and that competitive advantage makes its way unaltered into the source selection decision document where he relies on the value of Optum and then also notes differences between WellPoint. For example, he says WellPoint was created in 2014. We have no idea when OPSS was created. That differential evaluation led to the competitive advantage and that competitive advantage shouldn't have been the result of a disparate evaluation. Both of the entities should have been evaluated equally and that competitive advantage shouldn't stand. Okay, thank you. Thank both counsel.